JUANA HERNÁNDEZ, ETC., Plaintiff and Appellee, *v.* PORTO RICO RAILWAY, LIGHT & POWER CO., Defendant and Appellant.

No. 5182.   Argued May 7, 1930.—Decided June 15, 1931.

J. H. Brown, C. Ruiz Nazario, and G. E. González for appellant.
J. Lastra for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Plaintiff, a child of two years, while at play in the narrow space (about a meter and a half wide) between a tenement house and defendant's street railway track, was injured by one of defendant's street cars.

None of the witnesses for plaintiff saw her immediately before the accident, and there is no satisfactory basis for a theory that she was in the open space between the track and the tenement house for any appreciable time before the moment when she was seen by the motorman and two other witnesses for defendant. The testimony of these three witnesses indicates that she passed directly and quickly from the tenement house to the track. One of them, an inspector, who was standing beside the motorman says that she ran out as if from the balcony. The three are agreed in fixing the distance between the car and the child when they first saw her at four and a half or five meters. The motorman says that he was looking ahead and that when he first saw her she was approaching the track from the direction of the tenement house and was then about a half meter from the rail.

The car was gathering speed at five points and was traveling at ten or twelve miles an hour when the motorman saw the child. He acted promptly and brought the car to a stop within the shortest possible distance.

The track was straight and the view of the space between the track and the tenement house was not obstructed except partly, perhaps, by the steps leading up to the balcony. Neither the manner in which these steps were constructed

nor the height of the balcony appears from the evidence. A witness for plaintiff who was on the balcony at the time of the accident explains that she leaned out in order to obtain a view of the approaching car. The inference is that otherwise her view would have been cut off by another building hereinafter mentioned. Whether a child of two years when about to enter the open space from the balcony, or from the steps, or from a point behind the steps, or from a point between the two houses could have been seen by the motorman is not shown by the evidence. We can not assume that he could have seen plaintiff at any time before she appeared in the open space.

The district court rendered judgment for plaintiff upon the theory that if the motorman had acted at once when he saw the child at a distance of four or five meters from the "trolley" instead of waiting until she was within a half meter of the track, the accident might have been avoided. Plaintiff was not four and a half meters from the car at one time and a half meter from the track at another. She was four and a half meters from the car and a half meter from the track at one and the same time, namely, when the motorman first saw her. He did not delay action. His testimony as a whole leaves no room for doubt upon this point.

The judgment can not be sustained upon the theory of the trial judge, and appellee does not suggest any other satisfactory ground.

Plaintiff alleged that the place where the accident occurred was a public highway. There was no proof of this averment. The tenement house was on the south side of the street car track. In 1912 the Insular Legislature granted to the municipality of San Juan a strip of land on the north side of the track. In the same year the municipal council decided to pave the same, since which time it has been open to the public as a thoroughfare known as the Paseo de Covadonga. A line drawn parallel to the north rail of the street

car track at a distance of eighteen inches therefrom marked the southern boundary of the land so transferred to the municipality. This evidence tends to show that the right of way at that point was not a part of any public thoroughfare.

Thirty or forty yards to the east of the tenement house there was a street leading south to the water front. On the south side of the track between this street and the tenement house there was another building known as the de Hostos place. There was testimony that the people who live in the tenement house pass over the street car track when entering or leaving the place. Neither the rails nor the cross ties were flush with the ground but stood out about a foot above the general surface level. Nowhere in the record does it appear that there were any buildings, other than the tenement house and the de Hostos place, to the west of the cross street already mentioned. There was testimony that very few people used the space between these two buildings and the track. There is nothing to show the size of the tenement house, the date of its construction, nor the number of people housed therein. There is nothing to show that children were accustomed to use the space between the track and the tenement house as a playground. One witness, in answer to a leading question on cross-examination, refers to another child as living on an upper floor of the tenement house. Beyond this there is nothing to show that there were any other children in the building. As already pointed out, there is no satisfactory showing that plaintiff herself was at play in the space between the track and the tenement house before the time when she was seen crossing that space toward the track. The testimony of the motorman that he was looking ahead is not contradicted by that of any other witness, nor by the surrounding circumstances. The trial judge did not find him guilty of negligence in not having seen the child sooner than he did, nor do we think that the evidence as a whole would have justified such a finding. The positive testimony of two other witnesses, as well as that of the

motorman points persuasively to a conclusion that the accident was unavoidable.

There was some conflict in the testimony as to whether or not the motorman was ringing his bell. The trial judge made no finding in this regard. Without expressing any opinion as to the duty of the motorman to ring his bell when about to pass the tenement house or as to possible causal connection between a hypothetical failure to perform such duty and the injuries received by plaintiff, we think that a preponderance of the evidence is in favor of the defendant's contention that the motorman was ringing his bell.

The running of the car at ten or twelve miles an hour was not actionable negligence. The company can not be required to run its cars at a speed that will safeguard from injury every child that may run suddenly from some unseen place of safety onto the track immediately in front of a passing car.

The judgment appealed from must be reversed, and the complaint dismissed, without costs.